oral argument not to exceed 15 minutes per side. Mr. Nelson for the appellant and you may proceed when ready. Thank you. Thank you and good afternoon judges and your honor. Judge Strach, by video. My name is Jesse Nelson. I have reserved three minutes of rebuttal time if it meets with the court's pleasure. Very well. Thank you. May it please the court. Your honors, the law governing this issue would sound easy enough at first. It's that a city is not liable solely for employing constitutional tort feasors, but a city is liable when its own actions violate a person's constitutional rights. And so we look to see where this distinction can be found and we find it first in Monel, which is the Supreme Court opinion that first establishes and recognizes municipal liability under 1983. And what it says is that when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury, the city is liable. There's been some difficulty sometimes applying that to the different facts because we have to look at the specific actions at issue and the very specific state law at issue. What's your theory in this case? So you're arguing that there's an official policy of the city that caused the injury. Is that correct? The official policy being the acts of those with final policymaking authority. That's correct. So you're not arguing like an improper training theory or a ratification theory or something else? No, Your Honor. It's the actions taken by those in final policymaking authority. Are those the three with the final policymaking authority? Over the actions at issue here, Judge Raylard, we believe, yes, it is. And that's sort of why we believe some courts sometimes find there is no municipal liability is because you have to look at the actions at issue, you have to look at the specific state laws at issue. So for the termination, for example, why is it those three as opposed to the city commission? Sure. So first of all, there is no state law that says that only the board can take the action. Here it says, I'm sorry. What is the local law? So we should look at the local law then? The local law. That's right. So what does the local law say? And that's what I'm referring to when I refer to state law. I'm also encompassing that because as Propotnick says, that is state law for purposes of the analysis. It's state law passed by the board. It might be worth, I mean, you're talking about the charter, or it might be worth pointing to what you're specifically pointing to. Sure, sure, sure. So the lower court, I believe, looked at the correct state law, which is the charter, which was passed by the General Assembly. So that's state law. Then you have a personal ordinance passed by the governing body. So that's an ordinance. So that's applicable state law under Propotnick. And then you even have the handbook that's been formally adopted by the board that also has the power and authority of state law. And so in the court, I believe, correctly looked at those things. Let me ask you, Counselor, that's what I'm struggling with. Doesn't section 4-205 of the personnel ordinance charge the human resource officer and the personnel commissioner, who are the people at issue here, with preparing rules and regulations regarding disciplinary action and separation from employment? I think that's your argument. But then it goes on to say, which are to be submitted to the board and the mayor for adoption by resolution. Doesn't that show that their action is non-final and that the final persons in charge of those very issues are the board and the mayor? Your Honor, I believe that is a fair reading of that provision. And I'm not going to deny that it is a fair reading of that provision. Here's where I believe that that's not the end of the story on that provision. There are actually a couple of different reasons. If Your Honor's view of that provision were accepted, that would mean that the only way there could be a constitutional violation actionable would be if one of those three presented the unconstitutional policy to the board and it was formally adopted. That's not what the Supreme Court says. The Supreme Court says that, of course, that is one way, but a municipality cannot delegate away its constitutional authority. And I believe, in fact, that was this Court's opinion in Myers that basically said you can't just put that in a resolution or handbook saying that only an affirmative vote by the board to violate someone's constitutional rights would be actionable. And so that's why it specifically says by the official lawmakers or those whose edicts may fairly be said to represent official policy. And so, in other words, the state law can't so insulate essentially city action by putting a provision in the state law that reads as... But does it really insulate the commissioners because Ms. McGuire could have, I mean, wouldn't you agree, Ms. McGuire could have gone to the commissioners to protest how she had been treated by her supervisor. They ultimately have the authority here. Wouldn't you agree that they could have overridden the demand for her to resign or be terminated? I don't judge Bush for a couple of reasons. First of all, as I pointed out, we're not only challenging the termination. And so to the extent that we're looking only at termination as being the actionable event, I believe that in theory is an option. Although there is no procedure for that. There's no appellate procedure for that. And presumably she would have to go through the same policy to get to speak to the board that she did the first time. Would you agree the board did have the ability to override the decision by Wilson, Moser, and Morgan? If the board would have voted affirmatively not to terminate her, I believe, yes, that was 100% in their authority to do that. But I don't believe that... How do you treat the, what is the significance, if any, of the fact that one of these, I can't remember which one, went to, there's some testimony that there was an informal polling, I guess, of the commissioners as to what they would do in the future with Ms. McGuire. Does that have any legal significance here for anything? That's a great question and a great pickup. And I wish I could tell you the exact answer on that. But the reality is obviously there's no records or meetings, you know, minutes of those meetings. Nothing formal was done. And so I think it honestly could be argued either way. On the one hand, I think you could say that means that what ultimately transpired was official action because there was a polling of the full board. The full board knew what Jessica Morgan was going to do and Moser, you know, was fully apprised. And therefore, when it happened, it was the city who did it. So I believe that's one angle and conclusion that can be reached from your scenario. I think the other one is, well, that would establish that Jessica Morgan may not have final policymaking authority or at least, you know, fairly be said to have final policymaking authority as evidenced by the fact that she went and sort of informally discussed this with the whole board. So I honestly think you could reach two different conclusions. Which side are you arguing? Well, I'm arguing on the side. And so to your point, it doesn't have any legal significance. We don't even know that it happened. So no, I don't believe we necessarily need or have to go down this road of hypothetically what did these people individually tell her. But you're not arguing that they ratified the decision? Not officially because there has been no official ratification or vote on any of this. But that's also the evidence that we believe she has final policymaking authority. There's never been a vote or a policy as to any of this stuff. Even her policy as to how to speak to the board that the city in its brief insists. And that all the, Moser and Morgan, everybody said that is official city policy. I said, did the board ever approve? Yes, we met a separate question because there are separate rules that govern the agenda that goes before the board. But right now you're arguing about the termination issue. So I'm struggling. If you do not take the position that there was ratification by the board, I don't understand how under these rules you're going to be able to show her as the final authority, final policymaking authority because we've got the personnel ordinance 4-205. We've got the handbook that states that the mayor and the board have the sole authority to remove officers and employees. Moser, Morgan, Wilson all testified to that in their deposition. So that has been recognized by every party. And then if you look at the handbook, the portions of the board's authority that can be delegated brings us right back to the ordinance that says that Morgan and Moser have the power to make rules and regulations for review by the board. So doesn't the law state, if you're not claiming ratification, I don't understand what authority you can be relying on. Your Honor, we're not claiming official ratification at a public meeting, which is what the lower court held would have to happen. It says only the policy enacted by the affirmative vote of the board could ever control here. And, Your Honor, that just is not what the Supreme Court precedent, that's not what Meyer had happen. I do notice I'm past my time even reserved for rebuttal. No, you still have enough time. Oh, I do. Oh, very good. Okay, thank you. And so that's the point, Your Honor, that I think that's what this, you know, Monell even, that's the distinction. It says by its official policy makers or those whose edicts may fairly be said. And Pinbar, if I could read a quote from Pinbar on your point, Judge Stranch, it says the power to establish policy is no more the exclusive province of the legislature at the local level than at the state and national level. Monell's language makes clear that it expressly envisioned other officials' acts or edicts that may fairly be said to represent official policy and whose decisions, therefore, may give rise to municipal liability under 1983. A couple of sentences later, indeed any other conclusion would be inconsistent with the principles underlying 1983. If the decision to adopt that particular course of action is properly made by the government's authorized decision makers, it surely represents an official government policy as that term is commonly understood. A concern, what I'm struggling with is that the particular language in the governing documents here say that it's the board and the mayor. And then all parties testify it's the board and the mayor. And then the action that you challenge was the ratification question was done by someone who thought she had to go to the board for their approval before she could take the termination or even offer a different arrangement to Ms. McGuire. So why doesn't that fit within the case but show who is in charge in your particular instance for termination purposes? May I? I know I'm out of time. Yes, you may. So, Your Honor, for a couple of reasons. First of all, again, Judge Stranch, if I may just say we're not solely challenging termination. So when you do talk about policy of termination, I don't think we can only stop there is the first answer to the question. The other part of that question, first of all, we dispute Morgan's version of well, I sort of knew I needed to go to the board and have that approved and all of that stuff. She said she could suspend without pay, without board approval. She testified to that effect. With respect to the termination, she took action as far as the health insurance benefits and all of that kind of stuff without formal board approval even in light of what did happen. So we believe at best that would be a question of fact that yes, she did testify to that and as Ms. McGuire was not privy to those conversations, as much as I would like to be able to point to something in the record refuting what Jessica Morgan just simply testified to, I would have no credibility in doing that because she was just simply not privy to those conversations. But I do believe when we talk about searching the emails, suspending her without pay, even reporting all of this stuff that allegedly happened to the board, these are all actions that as the top HR administrator, she was not Ms. McGuire's supervisor. Can I ask you a question about your prior restraint claim? Yes. Are you alleging nominal damages associated with that claim? I'm alleging actual damage, but nominal damages with respect at the time that she no longer was able to say that. Obviously it sort of culminated ultimately in her termination and we say it was part and parcel because of what they said, although Ms. McGuire frankly denies it, they said she continued to repeat those allegations to members of the public. What's the injury? I'm just trying to figure out how you're standing for that claim. Is she arguing that she wants to go back in front of the commission in the future and doesn't want to have these hurdles to doing so? No. With regard to the prior restraint, she's not saying she now wants to go back. I think what she's tying it to is no future injury. No future injury with respect to prior restraint. How do you quantify the past injury? Yeah, it would be nominal damages, I suppose. Do you believe nominal damages? I believe we pled nominal damages. What are they? Well, it would be the important constitutional right. I mean, that's true with any prior restraint claim. I mean, if you're told by the government that you can't have a rally, for example, based on a content of your speech and therefore you cancel the rally, I mean the likelihood of you having any kind of actual compensable damages is low or at least easy. Sometimes in those cases they say they want to hold a future rally. They want to do it again. Maybe, maybe. That's not what we're pleading. You're not saying that. We're not pleading that, no. So it would be the nominal damages associated with the important constitutional right of having your First Amendment right to speak at a time that matters. Of course, everything has already transpired now with respect to saying, you know, hey, all of this work that he's done, he's done in his capacity as, you know, in this conflict of interest scenario that ultimately, of course, it passed. Well, thank you, Mr. Nelson. You'll have your rebuttal. Ms. Reed. Thank you, Your Honor. Good afternoon, Your Honors. Good afternoon, Judge Strantz by video. Courtney Reed for the appellee. The district court correctly granted summary judgment in this matter on the appellant's loan, First Amendment, federal claim brought pursuant to Section 1983, as we've already been talking about this morning. The appellant cannot show any wrongful action by a final municipal policymaker that would establish liability on behalf of the city of Sweetwater. And the court has already brought up the key question in this case. And the actors are Jessica Morgan, the city recorder and HR officer, Sam Mosier, the planning commissioner, and John Cleveland, who's the city attorney. The question is whether there are final policymakers for the city with respect to the challenged constitutionally violative conduct. Let's assume they're not. Let's assume that they're not. But doesn't our case law say that the acts of a subordinate can make a municipality liable if they're ratified by the final policymaker? That's Feliciano back in 1993. Hasn't that been our case law for some time? Yes, Your Honor, but there was no ratification by the board here. That's the key fact. This polling that Judge Bush brought up, Jessica Morgan's testimony clearly states she talked to some of the commissioners because Jane Maguire's employment was coming up for renewal in July of 2018. And some of these commissioners told her that they either would vote not to renew her appointment or they would vote to terminate her. Again, Morgan was not the supervisor over Maguire. Morgan was not a department head or commissioner that had authority to even suspend her. Maguire wasn't suspended without pay. She continued to receive payment through July, period. The harm that the plaintiff has focused on in her own motion for summary judgment and in the amendment complaint was the termination. You have to ask what's the adverse action here for this First Amendment claim. How many commissioners are there? Five. How many commissioners did Ms. Morgan speak with? I don't think the number is clear, Your Honor, based on the testimony. I thought that the testimony was that she spoke with everyone on the board. Is that incorrect? I know at least, Your Honor, I think the testimony was that she spoke with board members informally. And it may, I don't want to misstate it, it may have been everyone. But, again, this is not a situation where they made a decision. Her testimony was that- Here's my concern. You cannot get around a constitutional right by holding a meeting before your actual meeting. Someone cannot go and poll commissioners, technically speaking, under the Tennessee law of open meetings. You can't even talk together on telephone if it is deliberating toward a decision that the board has the power to make. So if she went, if Morgan actually spoke to all of the commissioners and asked them about whether they intended to retain McGuire, which is a termination decision, and they said they did not, and then she talked with them about, well, what kind of a package could we do? Why isn't that, in fact, ratification of termination? Because it wasn't a certainty, Your Honor, her testimony. It was not a certainty as to what they would do, and it wasn't, we're going to terminate her. It was, we're either going to vote not to renew or terminate her. They did not make a formal decision at a meeting. It was an informal conversation. I would suppose if, is it true that Tennessee law prevents there being private decision-making of a board like this? In private, it has to be in public, everything that happens? Yes. I suppose you could say that the fact that this was not public is an indicia that it wasn't a decision of the board because it wasn't made in a public meeting. It was not made in a public meeting, and as the district court pointed out, any resolutions, measures taken by the board have to be in a formal meeting. It's set forth in the city ordinances and the charter. And what happens if you don't do that? And what happens if a board does not take its formal action at the board meeting, but in fact makes a preliminary determination? It's in violation of the Constitution. I don't think that the board made a predetermination, Your Honor. But if that had happened, then the cause of action would be different. It would be a violation of the Open Meetings Act and other state law if they took an action without having a formal meeting. But no action to terminate her or vote not to renew her appointment was ever made by the board. Well, that's not what the testimony is in this record. I guess my concern is isn't it, based on what you've just argued, a dispute of material fact as to whether the board itself ratified the decision? I don't think so, Your Honor. Again, the testimony was it was not a certainty. Again, you know, we wouldn't be here if Morgan and Moser and Cleveland had been sued individually. That's not the case. Those are the ones that are the constitutional tort fuses, as argued by the appellant. Again, the Myers case that the appellant mentions in her brief is distinguishable from this, because in that case, the director of safety made the decision to demote the employee, which was approved by the city manager. And the city manager clearly had final authority under the city charter to dismiss that employee. And then that was appealed to the commission and it was upheld. We don't have anyone. These tort fuses did not have final policymaking authority to take a termination action with respect to the appellant's employment. Then is Ms. McGuire not fired? I mean, their argument, the appellant's argument, is that she was constructively discharged. That's been the basis of the harm for this First Amendment claim the whole time. And she did resign on May 3rd. Because she was given an option of not being renewed or being terminated or taking the package, and she took the package. Again, it wasn't an option that Morgan, Moser, or Wilson could have made. They didn't give her the option. Morgan just told her about her informal conversations with board members as to what they may do in a formal meeting in July of 2018. Can I ask you, this ratification discussion is interesting, but I don't think that's the way the plaintiff pled the case in the trial court. I don't think it's the way he argued the case in his briefs to this court, and he's twice this morning said he's not arguing a ratification theory. So it's a little difficult for you to respond to some of those questions when it's not the way the case was pled by the other side. But I understand your friend on the other side is saying that effectively these three were the final decision makers, not because something was ratified, but because there was no recourse beyond these three. And once these three made a decision, that was effectively final, at least by custom or practice or formal rule in this community. So what's your response to that? There was no appellate option for? If you look at the handbook, which is part of the record, there is a grievance procedure in there. There's also procedures as to, after following dismissal, if you look in the employee handbook itself. So she could have gone to the board to file a grievance against these tortfusers or, in general, with respect to that conversation that they had. There is a procedure for her to do that. So there's one, you said, file a lawsuit, state or federal court was one recourse. But are you saying there's also a separate administrative? Yes, there's a grievance procedure in the handbook. Did she follow that procedure? She did not follow that procedure. Is it a requirement? Is it an administrative requirement? I would have to look. I would have to look. You're lying. You're lying. You're lying. You're lying. It's at will employment in the handbook. They can have a name clearing hearing. It's not silly to let them clear his or her name. That's different. But also separately from that is a grievance procedure. So if she had any grievances relating to her department head, which would be Scott Wilson, she could have discussed the problem with the mayor and board of commissioners. That grievance procedure is separate from the dismissal part. But again, if they didn't have an authority to terminate her employment, then she could have gone before the board pursuant to this grievance procedure. It's not it's in there just to provide a uniform disposition of grievances presented by individual employees. Is there anything in the record of other employees having gone before the commission? There's not anything in the record, Your Honor. And then to address the prior restraint issue, again, that was mentioned in passing in the pleadings. It wasn't argued in the plane and the appellant's own motion for summary judgment. But the prior restraint claim would be what the appellant has alleged is Morgan's threats to back off. This occurred after the appellant had already mentioned the conflict of interest at the February 19th, 2018 planning commission. This was after she'd already learned that the Hall property was not the property that her supervisor was listing. She had been informed by Morgan and Wilson that M-TAS had previously cleared him from acting as a real estate agent. And then again, as a specific issue, they cleared it again. The appellant continued on with her crusade against Wilson. And again, a prior restraint, as you all know, is an order before the protected speech is uttered. That threat came after she had already alleged the conflict of interest in February. Is there a condition on whether your friend on the other side, whether his client has standing to pursue this claim? In other words, they're not claiming that they want to speak in the future and there is a risk of them being denied the opportunity. Do you have a position on nominal damages or anything else related to standing? That was not briefed, Your Honor, but I would say that she... Something we have to consider. I have to consider, I think, in every case, and I don't think she would have standing on that. First, she already, she was, the votes already happened. She did, even after that back off comment allegedly was made, she still went before the board in their workshop. She still was at the March 5th, 2018 meeting. And her testimony was she admitted she could have spoken at that meeting but decided not to. And then she again spoke at the public hearing on April 2nd. So she wasn't, she was able to still speak. The question would be, what are the damages? Because she still had the opportunity to speak about whatever she wanted to about the rezoning. And in fact, in that February 26th, 2018 meeting, when Morgan said, oh, you made a very good point about one of the reasons why McGuire opposed the rezoning, she pointed her finger in Morgan's face and says, you don't tell me what I speak about tonight. So the appellant was not even subjectively deterred from asserting what she wanted to about the conflict of interest in the rezoning of the Hall property. But I would agree with Your Honor that if she already made the speech and continued to be able to speak, what's the damages? And you have to have an injury to have standing. Thank you. Unless the court has any other questions for me, I believe the district court decided it correctly, based on the handbook, the personnel ordinance and the charter, that these tortfeasors were not final policymakers for purposes of Section 1983 and summary judgment was correctly decided in favor of the city on the First Amendment claim. Thank you, Ms. Reed. Mr. Nelson. With respect to the ratification issue that has been hit on, we would submit that that's the evidence. There is no issue here of ratification of a civil service commission, which is what you saw in Propotnick and even in, I believe it was Pember, both of which had a higher level that was the policymaking body with respect and had final authority. You don't have that here, even with respect to the package, the insurance offer. She was allowed, Ms. McGuire was allowed to have resigned, and I use air quotes on purpose, and receive insurance benefits. There was no formal adoption of that plan. So how did it come to be? A final policymaker, Morgan and Moser, said this is an option. She took it and that was final and there was no higher authority. Your friend on the other side said there was an administrative channel that maybe she could have pursued. Your Honor, I'm not aware of that. She read it. Well, she read the part about a name clearing. She didn't testify. I'm not saying that was evidence, but she purported to read from a policy. So you're just not aware of the policy or you're not aware of how the policy has been implemented? The whole thing. The whole thing. It was certainly never told to her. It was never told to her as an option. That was never anything that was being discussed. And to the extent there was a name clearing hearing as being an option, that wasn't exactly what we were dealing with. Perhaps it was something. But even then, it was a name clearing hearing, not quite what we're dealing with here. Counsel, I'm trying to get a handle on what the beef here is. The beef obviously is that she was terminated or constructively discharged. What else are you complaining about? Because it sounds like to me that she did get to present at these hearings. She may have attempted intimidation, but she did get to do what she wanted to do, didn't she? Not as to the conflict of interest necessarily. To Ms. Reed's point, she had uttered the protected speech, but there's no rule to say, hey, once you've uttered it and we know you're going to utter it, if we tell you you better not utter it again or there will be consequences, that that in and of itself is not another prior restraint. If you know that a person is going to speak, that's Whitney all over again. I was actually counsel involved in that case, and that was very much at issue in Whitney versus— But she's not claiming there was an occasion she had that she was denied the opportunity to speak. Other than the threats of you will be fired for insubordination and sued for defamation. And so from that— And she contends she was, in fact, fired. Right, she later was fired, even though in reality— I'm just having a hard time separating those other things from the firing itself. It seems like that's her complaint, is that she was constructive with— And that would be the retaliation, yes, Your Honor. The last point is the Myers versus Cincinnati. I'm done. I'm out of time. Well, thank you. Thank you for respecting the time. We will take the case under submission. The clerk may adjourn the court. This audible court is now adjourned. Judge Trench, I'm going to move you into the roving room now. Is that okay? Yes, thank you, Marshall.   Thank you.